IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STACY R. INGRAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:17CV17 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stacy Ingram ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 15, 2013, alleging a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

October 16, 2009 in both applications. (Tr. at 87, 179-89.)[2] His applications were denied initially (Tr. at 36-57, 100-05) and upon reconsideration (Tr. at 58-83, 106-14). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 117-24.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent video hearing on August 24, 2015. (Tr. at 87.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through September 2, 2015, the date of the administrative decision. (Tr. at 95.) On November 7, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from a single severe impairment:

borderline intellectual functioning.

(Tr. at 89.) The ALJ found at step three that this impairment did not meet or equal a disability listing. (Tr. at 89-91.) Plaintiff does not challenge this listing determination at step three. The

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

ALJ then assessed Plaintiff's RFC and determined that he could perform a full range of work at all exertional levels, but required the following nonexertional limitations:

> He can do work that is limited to simple and routine tasks, involving only simple, work-related decisions, and with few, if any, work place changes. He can occasionally interact with supervisors, coworkers, and the public.

(Tr. at 91.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could perform his past relevant work. (Tr. at 93.) In an alternative finding, the ALJ also determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 93-94.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 94-95.)

Plaintiff now raises several challenges to the ALJ's RFC assessment, all based on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Specifically, Plaintiff argues that the RFC (1) fails to adequately reflect Plaintiff's moderate limitations in concentration, persistence, or pace, social functioning, and activities of daily living, and (2) fails to adequately reflect the findings of the State agency psychological consultants. Plaintiff also contends that the ALJ erred by determining the RFC before assessing his credibility, as specifically prohibited in Mascio, 780 F.3d at 639. After a thorough review of the record, the Court finds that none of Plaintiff's contentions merit remand.

    A.    Moderate Limitations in Concentration, Persistence, or Pace, Social Functioning, and Activities of Daily Living

Plaintiff first contends that the RFC fails to encompass his moderate limitations in concentration, persistence, or pace, social functioning, and activities of daily living. As to this contention, the Court notes that at step three of the sequential analysis, the ALJ determined

that Plaintiff has moderate limitations in concentration, persistence, and pace, moderate limitations in social functioning, and moderate limitations in activities of daily living. In Mascio, the Fourth Circuit noted that where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light

of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as noted above, the ALJ found moderate limitations in concentration, persistence, or pace, moderate limitations in social functioning, and moderate limitations in activities of daily living. (Tr. at 90-91.) When later assessing Plaintiff's RFC, the ALJ determined that Plaintiff would be limited to simple and routine tasks, involving only simple, work-related decision, and with few, if any, work place changes, and occasional interactions with supervisors, coworkers, and the public. Thus, the ALJ included specific limitations to not only simple and routine tasks, but tasks involving only simple decisions and few, if any, changes, with only occasional interactions with others. Moreover, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace, social functioning, and activities of daily living were accounted for by the RFC.

First, with respect to concentration, persistence, or pace, in finding moderate limitations at step three, the ALJ explicitly relied on the findings of the State agency psychological consultants, Dr. Salmony and Dr. Hilts, that Plaintiff did not have more than moderate restriction in this area. (Tr. at 91.) Notably, Dr. Salmony and Dr. Hilts both concluded that Plaintiff remained capable of simple, routine, repetitive tasks, and Dr. Salmony and Dr. Hilts both specifically found that Plaintiff has "the ability to carry out very short and simple instructions and is able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks." (Tr. at 45-46, 68-69.) The ALJ also relied on Plaintiff's activities, which included a work history of substantial gainful activity as a warehouse worker, suggesting no more than moderate limitations. (Tr. at 91, 90). In addition,

8

the ALJ cited to consultative reports which "suggest no more than moderate limitations." (Tr. at 91.) In subsequently setting the RFC, the ALJ gave great weight to the opinions of Dr. Salmony and Dr. Hilts, and included in the RFC a limitation to simple and routine tasks, "simple, work-related decisions," and "few, if any, work place changes" in light of the record as a whole. (Tr. at 91-93.) In setting the RFC, the ALJ also noted Plaintiff's past work history as a warehouse worker for ten years, and noted that Plaintiff was able to perform that job at SGA levels, that the job ended only due to economic layoff and not due to Plaintiff's impairment, and that Plaintiff was not reporting any decreased functioning since he held that job. (Tr. at 92.) The ALJ therefore concluded that Plaintiff's work history supported the conclusion of Dr. Salmony and Dr. Hilts. (Tr. at 92.) The ALJ also gave great weight to the opinion of John Holt, M.A., a consultative psychological examiner. (Tr. at 92, 298.) As noted by the ALJ, the consultative report reflects that Plaintiff "reported strong adaptive skills," and that even with his deficiencies, Plaintiff had the ability to work in a competitive work setting and would make a valued employee. (Tr. at 92, 298.) The ALJ notes that this opinion "matches [Plaintiff's] work history and [Plaintiff's] activities." (Tr. at 92.) The ALJ also gave great weight to Plaintiff's vocational evaluation. The ALJ noted that the vocational evaluation was conducted over a two-week period and reflected that Plaintiff is "able to comprehend job related instructions," that "if given the opportunity, [Plaintiff] could perform multiple jobs," that Plaintiff "performed above average work," and that Plaintiff "could learn tasks in a timely manner." (Tr. at 92-93, 301.) That report further notes that Plaintiff "worked diligently on his assigned tasks," that he "remained focused while completing his work," and that his "ability to learn job tasks in a timely manner was efficient." (Tr. at 301.) The ALJ's discussion of, and

9

reliance on, the opinion evidence and on Plaintiff's ability to maintain prior employment adequately explains the extent to which Plaintiff's moderate limitations in concentration, persistence and pace at step three translated into RFC restrictions.

Similarly, with respect to social functioning, the ALJ found Plaintiff moderately limited in this area at step three of the sequential analysis and again explained that he based this determination on the findings of the State agency consultants, Dr. Salmony and Dr. Hilts, that Plaintiff did not have more than moderate restriction in this area. (Tr. at 91, 42, 65). The ALJ also noted that Plaintiff "reported minimal issues in social functioning" and "has friends." (Tr. at 91, 90.) In setting the RFC, the ALJ included an RFC restriction to occasional interaction with supervisors, coworkers, and the public. (Tr. at 91.) In reaching this determination, the ALJ relied on the conclusions of the state agency consultants, Dr. Salmony and Dr. Hilts, as well as Plaintiff's ability to maintain prior employment. (Tr. at 92.) Dr. Salmony and Dr. Hilts both concluded that Plaintiff was capable of employment despite some social limitations, and Dr. Salmony and Dr. Hilts both specifically concluded that Plaintiff has "the ability to accept instructions and respond appropriately to criticism from supervisors and interact appropriately with others." (Tr. at 45, 68.) In addition, the ALJ cited to Plaintiff's vocational evaluation finding that Plaintiff "displayed appropriate social skills and he did not have communication issues." (Tr. at 92, 301.) Thus, the ALJ's reliance on the opinions of the state agency consultants and the results of the vocational evaluation, as well as the ability of Plaintiff to maintain prior employment, all provides a sufficient basis for the RFC determination with respect to Plaintiff's limitations in social functioning. Moreover, Plaintiff

points to no other evidence supporting a need for further social limitations, and no such evidence is apparent in the record.[5]

Finally, with respect to activities of daily living, the ALJ found moderate limitations in activities of daily living at step three, again based on the opinions of the state agency consultants that Plaintiff did not have more than moderate limitations in this area. (Tr. at 90.) The ALJ's step three findings recount that Plaintiff "reported performing most normal activities and only struggling with reading, writing and comprehension." (Tr. at 90-91, 289). The ALJ also noted that the consultative examiners indicated that, "with just a little extra assistance, [Plaintiff] could learn instructions." (Tr. at 91) (citing 295-98,l 301-03). In addition, earlier in the step three analysis, the ALJ also noted that Plaintiff "had his intellectual issues for several years but was able to maintain work at SGA levels" and "[t]he record does not support any issues in personal needs and only reported issues with reading and writing." (Tr. at 90.) The ALJ then relied on the analysis of the state agency consultants and Plaintiff's ability to maintain prior employment in setting the RFC. Plaintiff fails to suggest (1) how these findings are inconsistent with the RFC or (2) what, if any, additional limitations in the RFC would be warranted based on his moderate limitations in activities of daily living.

Ultimately, the Court concludes that the ALJ not only adequately accounted for Plaintiff's limitations in the RFC itself, but also provided additional explanations and bases for doing so in his decision. This is sufficient to create the requisite "logical bridge," and in these

---

[5] In addition, the Court notes that the restriction to only occasional interaction with supervisors, coworkers, and the public is not ambiguous or unclear. Consistent with the DOT definitions, this restriction limited Plaintiff to interaction with others up to 1/3 of the day, and the vocational expert understood this limitation and provided job titles from the DOT consistent with this limitation. (Tr. at 32-33.) See O'Brien v. Colvin, Case No. 1:15CV536, 2016 WL 2755459 at *5 (M.D.N.C. May 11, 2016).

circumstances, there is no basis for a remand pursuant to Mascio. See also Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations).

B. State Agency Consultants' Opinions

Plaintiff next contends that, despite giving great weight to the State agency psychological consultants' opinions, the ALJ "omitted some of their opined limitations from the [RFC] without an explanation." (Pl.'s Br. [Doc. #9] at 11.) However, the "omitted" restrictions cited by Plaintiff amount to no more than minor distinctions in the underlying functional areas set out in Section I of the mental RFC forms. These ratings do not constitute the consultants' ultimate RFC assessments. Rather, in Section III of the form, the evaluating psychologists are asked to explain, in narrative form, their reasons for the degree of limitation opined and the impact of the limitations on Plaintiff's ability to perform basic work activities. In other words, the consultants use Section III of the mental RFC form to translate the raw, form limitations from Section I into workplace limitations specific to a given claimant. "It is the conclusions of state agency psychologists set forth in Section III . . . , and not their initial summary conclusions set forth in Section I, that are ultimately relevant to the calculation of a plaintiff's mental RFC." Bacnik v. Colvin, No. 1:12-CV-801, 2014 WL 3547387, at *4 (M.D.N.C. July 17, 2014) (citing Program Operations Manual System ("POMS") 24510.060(B.2.a)) ("*Section I is merely a worksheet ... [and] does not constitute the RFC assessment*") (emphasis in original).

Here, the only RFC restriction proposed by either State agency consultant was a limitation to simple, routine, repetitive tasks. (Tr. at 46, 69.) The ALJ not only accepted this limitation, but further limited Plaintiff to tasks involving "only simple, work-related decisions," "few, if any, work place [sic] changes," and occasional interaction with supervisors, coworkers, and the public. (Tr. at 91.) Accordingly, the Court finds no error.

C. Credibility

Finally, Plaintiff contends that the ALJ erred by determining his RFC before assessing his credibility, as specifically prohibited in Mascio, 780 F.3d at 639. Notably, in Mascio, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. (citation omitted). In the present case, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 92.) Unlike the language in Mascio, this boilerplate does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

Mascio further explains that, even where an ALJ makes a "backwards" credibility determination, "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." Id. In that case, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and related his reasons for discounting the severity and limiting effects of Plaintiff's intellectual impairment based on the record as a whole. (Tr. at 92-93.)

As reflected in the ALJ's decision, Plaintiff worked for many years at a level constituting substantial gainful activity until 2009, when his job ended "due to economic layoff and not due to any impairment." (Tr. at 92.) Plaintiff's alleged onset date in 2009 was based entirely on his loss of employment; he reported no decrease in functioning at that time or at any time during the period now at issue. (Tr. at 92) (citing 20 C.F.R. §§ 404.1505, 416.905; SSR 82-61, 1982 WL 31387, at *1; SSR 82-62, 1982 WL 31386, at *1) (explaining that a claimant's inability to work must stem from a severe impairment). In short, the ALJ found that Plaintiff's work history contradicted his current allegation of disability. (Tr. at 92.)

The ALJ further explained that the opinion evidence supports this finding. Consultative psychological examiner John Holt, M.A., conducted a thorough examination and concluded that Plaintiff maintains the "ability to work in a competitive work setting." (Tr. at 92, 298.) The ALJ gave this opinion great weight, noting that it was based not only on test results, but also Mr. Holt's personal observations of Plaintiff. (Tr. at 92.) Similarly, the ALJ assigned great weight to the opinion of the two-week vocational evaluation of Plaintiff. (Tr. at 92-93, 301-303). As recounted in the ALJ's opinion, Mr. Ward reported that Plaintiff

> displayed appropriate social skills and . . . did not have communication issues. He was noted as being able to comprehend job related instructions. On objective testing, [Plaintiff's] Becker Work Adjustment tests placed him at the 98th percentile. Mr. Ward opined that if given the opportunity, [Plaintiff] could perform multiple jobs. He performed above average work and he could learn tasks in a timely manner.

(Tr. at 92-93) (internal citations omitted). Finally, the ALJ assigned great weight to the opinions of the state agency psychological consultants, who considered all of the above in finding Plaintiff capable of simple, routine, repetitive tasks. (Tr. at 38-47, 60-69, 92-93.) Plaintiff suggests no additional mental RFC limitations supported by his testimony. He instead

relies entirely on his Mascio argument to challenge the ALJ's credibility findings. Because this challenge fails, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 23rd day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge